Our final case for oral argument this morning is Appeal Number 25-1036 Wickstrom v. Air Line Pilots Association, and both counsel are appearing remotely. So, I see Mr. Green and Mr. Elliston. Counsel, can you hear me? Mr. Green? Yes, your honor. Mr. Elliston? Yes, your honor. We will begin with you, Mr. Green, whenever you're ready. Thank you so much, your honors, and thank you for allowing our remote appearance here today. May it please the court, good morning, your honors. My name is Andrew Green, and I represent the appellants in this matter. Your honors, we are asking the court to reverse the dismissal below after the district court denied plaintiffs' motion for leave to amend and remand the case for adjudication of our duty of fair representation claim. The case is about the union abandoning its statutory obligation under the Railway Labor Act to protect its members from unilateral changes to working conditions, and in doing so, left our clients, the pilots, without any meaningful representation. Broadly speaking, the case hinges on 45 U.S.C. 151. That's the foundation. The Supreme Court has made clear in Steele that when Congress authorized unions to act as the exclusive bargaining representatives, it did not give them such plenary power to sacrifice for the benefit of its members rights of the minority of the craft without imposing on it any duty to protect the minority. That principle applies here, although unlike Steele, which related to racial discrimination, you still cannot condemn and discriminate against the minority of the craft. An individual's own autonomy and control over what is put into his or her own body, again, is irrelevant and invidious, and discrimination should not be allowed. The Supreme Court also held in O'Neill that our decisions have long recognized the need for such an examination proceeds directly from the union's statutory role as the exclusive bargaining agent, again, recognizing the immense power and control the union does have. Your Honor, Congress codified the status quo rule in 45 U.S.C. 156. No intended changes affecting pay, rules, or working conditions shall be made unless there is notice and bargaining. That's the issue here today, the bargaining issue. Any violation implicitly would violate any document, whether that's the CBA or any other letter of understanding or letter of agreement. United to pilot agreement. Counsel, do you dispute that the union had a good faith basis to determine that the vaccine requirement was permitted under the CBA? Your Honor, we do. So it's a two part question, Your Honor, and I appreciate the question because it's going to lead to a further argument that one of the areas that you are allowed to find a breach in is the bad faith argument. Nowhere explicitly in the CBA does it allow for the control over medical submission for medical examinations or physical examinations as opposed to other cases. Your Honors, in the appellee's brief, they rely on two cases similar to this one talking about vaccinations. It's on page 29 of their cases – or excuse me, of their briefs. They talk about the Stevens case and the Swappa case. Stevens implemented the COVID vaccine, but the court recognized that the CBA and the language of the CBA gave such a broad management clause that the aircraft could submit the employee to paid medical examinations. And thus, it was implicit that a vaccine requirement could then stem from that. Similarly, in Swappa, it was a labor union who filed suit against Southwest Airlines for failing to maintain the status quo. The court again finds this broad purpose in the CBA. Unlike that, Your Honors, in our CBA here, the United Pilot Agreement, there is no reservation for physical examinations, submission to physical examinations, any control over the vaccine or medical requirements of the individual pilots in this matter. I also recognize that the appellees consistently cite to Conrail, and that case, again, hinges on the fact that there was a policy or custom of submission to undergo physical examinations. And the court held there – ALPA uses this as both an argument that it's a minor dispute, and the system board should have exclusive jurisdiction removing this court's jurisdiction, but also stating that there's no arbitrary conduct here. Again, the inclusion of drug testing and a history and practice of drug testing in that matter is what led them to believe that it was a minor dispute and thus requiring drug screening and urine analysis was okay. The only support that they cite to here or refer to here, excuse me, is the yellow fever vaccine. That's one scenario, Your Honors, in a long timeline that came out. I think the vaccine came out in the 1930s, maybe for the benefit. Let's say it was administered to pilots in the 1940s. We're talking about one scenario in the last 85 years as opposed to here – or excuse me, in Conrail, they were doing routine physical examinations every single year, Your Honors. If I may, Your Honors, a lot of this case is going to hinge on the fact that the implementation of the vaccine was a change in working conditions as outlined by the Railway Labor Act. And I understand appellees are going to argue that it was a pilot qualification, that they filed this grievance to even argue that it was a pilot qualification. Do you lose if we agree that this was not a major dispute? It was a minor dispute and had to be arbitrated? Your Honor, I appreciate the question. I think it's very – I think it's a very complex question because a lot of our argument is going to hinge on the substantial change in working conditions. If you find it as a qualification anyway, Your Honor, the court would still have jurisdiction because there is still an injury in fact. It's not a jurisdiction question. It's a merits question. So if we agree that this is – with Mr. Ellison that this is not a major dispute, it's minor and needed to proceed via arbitration, can you still win on the merits of your arbitrariness argument? So in that case, Your Honor, no. I would have to submit to the position that you're taking there that if it is a minor dispute, the court has long held that minor disputes are for interpretations of the CBA themselves, and the arbitrator would have exclusive jurisdiction. However, this court has also found that when there's implementation or the attempt to create a contract or a change in term of contract, and that was in the Chicago and Northwest Transportation Corporation matter heard before this court in 1987, that would constitute a major change, which again, I believe, Your Honor, with the implementation of a COVID vaccine where you're literally changing employment contracts to require vaccination, that is a major dispute. That's not an interpretation of the CBA. And Your Honors, I do see that there's three minutes left. I would ask the court to reserve the remaining of my time for rebuttal. Certainly. Thank you, Mr. Green. Mr. Ellison? Thank you. Good morning, Your Honors. Thank you for hearing me this morning, and thank you for allowing us to participate remotely. I'm Josh Ellison for the Air – Defendant Appellee Airline Pilots Association. I'll briefly discuss why the plaintiff's claims here are unripe and then turn to the merits. ALPA is pursuing grievances on behalf of each of the seven pilots, alleging that United's termination of them for not complying with its COVID-19 vaccination mandate violated the collective bargaining agreement between ALPA and United. What's the status of those grievances? They are pending. Six of them are pending right before the arbitration stage at the request of the plaintiffs. The plaintiffs ask that we not advance those to arbitration until they are – until this litigation is concluded. And one of them is pending at an earlier stage, what's called an on-the-property, at the first hearing – after the first hearing with the company, because Plaintiff Ellis says that he does not want to go forward until ALPA satisfies him that it will protect his constitutional right to privacy. So, he's – they are – as of now, these are all being in – essentially in abeyance at the request of the plaintiffs. Mr. Ellis, while the grievances are being pursued, what's the status of the individual employment? In other words, are they officially terminated and are they at home, or are the terminations held in abeyance? What – are they stayed? Like, what's going on? The plaintiffs are in an unpaid status. They are not being paid. They are not flying. They are – the status quo is they are no longer performing active service for United. If we were to prevail on the grievances, if that was unjust, one of the – the relief that we would be asking is for back pay, that they should be made whole for that – for the time that they've been out. But they are currently not working, not getting paid. If you do succeed on the grievances, then is it automatic that they would receive all of their back pay, benefits, seniority status, and all of those things? It is not automatic. It would be up to the – it would be up to the arbitrator. We will be arguing that they should receive full back pay, full benefits, and full reinstatement. But that's ultimately – the extent of the remedy would be a decision for the arbitrator. Which is – it gets to one of the issues with allowing these cases to proceed right now without waiting for the arbitration process to play out is that, first, United is not a party to this. And ultimately, both the grievances – the grievances that were – that ALPA is pursuing and essentially plaintiff's claim here is that United breached the collective bargaining agreement. And under Vacaville-Sipes, the damages in this suit would be limited to the harm that was suffered that cannot be attributed to the employer. In other words, United is liable for the damages due to what it did, and it was the entity that imposed the mandate, and it was the entity that terminated the plaintiff. And ALPA would only be liable for the damages that could be attributed to its exacerbation of those harms. So that is one of the reasons why this case is premature, and it should wait until an arbitrator is able to decide whether United breached the contract and to what extent United is responsible for their harms before we – the court could meaningfully address ALPA's liability here. So while those grievances are pending, essentially the – ALPA is pursuing these termination grievances. It's also pursued the unfortunately unsuccessful grievance saying that these – the pilots should not have been terminated. They should have been treated as other pilots who did not get the yellow fever vaccine in a previous incident a few years ago and should – but should not have been terminated. They should have been placed in a temporary unpaid status. Unfortunately, we're not successful there. But the dispute here essentially is the plaintiffs are saying, well, we don't like the legal theory that you pursued. You know, you're saying that provisions A and B were violated of the contract, but we say that provision C, you should have made that argument, right? So it's the whole ball of wax here is what provisions were violated and – of the UPA, and that is for an arbitrator to decide. And specifically under the RLA, federal courts don't have jurisdiction to determine those disputes. Those are explicitly – you know, under Conrail and its progeny, those are – If I'm reading your brief correctly, you're not just making an exhaustion requirement. You're also saying that because of the pending arbitration, that that could render it moot, and therefore we don't have jurisdiction now. That to me seems to be shoehorning exhaustion into our jurisdictional jurisprudence. Can you explain what you're trying to get at there? Sure, yes. So you're correct that we are making the argument that the pendency of the grievances and the possibility that they will render these plaintiffs damaged – or they will make these plaintiffs whole in that forum deprives this court of jurisdiction because at this point it's an abstract contingent harm that they've suffered because they could be remedied through this other congressionally mandated process. So that is, in fact – we aren't making the exhaustion argument, but we're making the jurisdictional argument. For instance, in the Jennings case, this court found that because the patent office proceedings had not concluded and the plaintiff was suing over third parties for alleged malfeasance and fraud on the patent office, but because he hadn't actually suffered any harm yet because the patent office hadn't denied his application yet, that claim was unripe. But why is it this different? Because as the district court found, they've already been terminated. That's the harm. Well, Your Honor, I respectfully disagree because their terminations aren't final. Because if we succeed on the grievances challenging the termination, they will almost certainly be reinstated. If the arbitrator says that United lacked just cause to terminate them, they will be reinstated, and we will also be arguing for back pay. So their terminations aren't final. There's still a process going on on the property through the process that Congress has commanded unions and air carriers to set up that will resolve that. So that's why we think the claims are unripe. Then just briefly on the merits, Your Honors, below and on appeal, the plaintiffs have failed to address the fact that the UPA has a provision in Section 21K that says that United can change personnel policies as long as it provides notice to ALPA. There's no dispute here that ALPA provided notice. And ALPA's duty is not to make the decision that the plaintiffs may have agreed with, not to make the decision that a court may have agreed with with respect to analyzing the contract, but just to make a rational decision. That's what the Supreme Court teaches, and ALPA v. O'Neill is reserved to unions. So as long as the union makes a rational decision and there's no evidence of an invidious motive, then courts are to leave those decisions to the unions. And ALPA, after a two-day hearing, issued a decision about this issue of whether there was a violation of conditions of employment, and it said the contract reserves United the power to change these policies, to change personnel policies. And we submit that there's no way that that can be deemed wholly irrational in the words of ALPA v. O'Neill, a decision to conclude that based on the contract, United did have the right to do this. There's no evidence. The other prongs of the ALPA v. O'Neill test are discrimination, which is invidious. There's no allegation here that ALPA even knew the medical status of any of these individuals. People who didn't take the vaccine for medical reasons or religious reasons were all treated the same. As the court noted, ALPA simply did not challenge the mandate. There's no allegation or evidence that ALPA was improperly motivated. The other prong is bad faith, which is improper purpose, self-dealing, not acting in the best interests of the unit. And there's no allegation here. In fact, the allegation is that ALPA was motivated to help United obtain federal funding to prevent layoffs, which, as the district court said, well, how could that be an improper mode of protecting pilots' jobs? And I see my time is up, so I would just ask that the court affirm the district court's decision. Thank you. Thank you, Mr. Green. Thank you, Your Honors. Just to begin with the rightness arguments, Your Honor, that was already addressed by the court below. And one of the supporting citations that the appellees use in the matter is Rios O'Donnell, which ironically is the exact same judge who presided over this matter, Judge Kennelly. And in their brief itself, they omit the latter portion of their quote saying that a claim is not ripe until termination is final. And as Your Honor just correctly noted, and I heard opposing counsel kind of jump around the issue, my clients have been terminated for several years now. He said something along the lines of they're currently not engaging in duties. That's equivalent to termination. The grievance review panel refused to take this case forward to arbitration years ago. The latter argument that the amount of damages could be compensated, which would render this case moot, is such a frivolous argument. Even if back pay was awarded here, which is not even a concrete finding, it still would not make whole the past constitutional or federal or statutory harm that occurred here. The status quo grievances that were filed, I'll fail to give any of my clients support on, and they've been done for years now. I do want to go to Baca v. Sipes for a second because I know the appellee just talked about it. And I think it's a good contrast to our case here because in Sipes, the union, again, helped the plaintiff in such a regard as to even providing their own doctors and even funding the doctor visits for a plaintiff to resume work. Here, Alpa refused to join the plaintiffs in filing their status quo grievances. They did nothing to assist in gathering evidence, which opposing counsel just admitted to, that the vaccine could even be harmful to their individual health conditions. And they advised union leadership not to even interact with the plaintiffs in this matter. So they're completely analogous to each other, Your Honor. Your Honor, as it relates to pursuing of grievances, and I heard opposing counsel talk about they filed their own grievance. When they filed their pilot qualification grievance itself, Your Honor, the arbitrator did render in that opinion that it was not a pilot qualification. So the only rational outcome would be that it's a change in working conditions. It's either a qualification or a change in working conditions. That put them on notice that they had to act, and they knew about the Railway Labor Act, which any change in conditions, they had to bargain for. They did not do so here. The last point I'll hit on the last ten seconds is 21K. The change in company personnel does not at all give them express authorization to mandate vaccines. All it is is company personnel. It's not akin to attire. Your Honor, thank you for your time today, and thank you for hearing this argument. Thank you. Thanks to both counsel. The court will take this case under advisement, and that concludes our oral arguments for today. Thank you.